**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **360 MORTGAGE GROUP, LLC** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO. 1:14-CV-847-SS** |
| **JANINE BIVONA-TRUMAN AND** | § | |
| **HOMEBRIDGE FINANCIAL** | § | |
| **SERVICES, INC., DOING BUSINESS** | § | |
| **AS HOMEBRIDGE WHOLESALE,** | § | |
| | § | |
| **Defendants.** | § | |

**DEFENDANTS' TRADITIONAL
MOTION FOR SUMMARY JUDGMENT[1]**

Dated:  January 15, 2016

Brian A. Colao
Texas Bar No. 00793528
BColao@dykema.com
Victor C. Johnson
State Bar No. 24029640
VJohnson@dykema.com
Scott Yackey
Admitted *pro hac vice*
syackey@dykema.com
DYKEMA COX SMITH
1717 Main Street, Suite 4200
Dallas, Texas  75201
(214) 462-6400 – Telephone
(214) 462-6401 – Facsimile

**ATTORNEYS FOR DEFENDANTS
JANINE BIVONA-TRUMAN AND
HOMEBRIDGE FINANCIAL
SERVICES, INC., D/B/A
HOMEBRIDGE WHOLESALE AND
COUNTERCLAIM PLAINTIFF JANINE
BIVONA-TRUMAN**

---

[1] Despite an agreement between the Parties, Plaintiff failed to present its witness for depositions. Defendants reserve the right to amend this motion to include any and all evidence obtained at the depositions of Plaintiff's witnesses once those depositions are obtained.

Pursuant to Fed. R. Civ. P. 56, Defendants file this Motion for Summary Judgment as to all claims of Plaintiff 360 Mortgage Group, LLC ("Plaintiff"), and would respectfully show:

## I.    SUMMARY OF THE REQUESTED RELIEF

Plaintiff has brought claims relating to the alleged misappropriation and use of a list containing publicly-available information regarding mortgage brokers licensed in Nevada (Pl. Ex. 10, the "Broker List").  Unfortunately for Plaintiff, there is no cause of action under Texas law for use of publicly-available information, especially where, as here, that public information provides no independent economic value, was not protected, was not used, and no damage was caused to the Plaintiff. Accordingly, Plaintiff's claims fail as a matter of law and summary judgment should be granted to Defendants.

Plaintiff's primary claim for misappropriation of the Broker List fails because the Broker list is not a trade secret. Rather, it is available from a multitude of public resources, including Nationwide Mortgage Licensing System & Registry ("NMLS"), the Nevada Mortgage Lending Division website ("MLD Website") and the public website for The Association of Mortgage Professionals ("NAMB"), or may be cheaply purchased from other sources. Plaintiff also took no effort to protect the secrecy of the Broker List and HomeBridge did not use it. Accordingly, the unrefuted evidence shows that Defendants are entitled to summary judgment on Plaintiff's misappropriation claim.

The remainder of Plaintiff's claims also fail as a matter of law because the evidence conclusively shows that the Broker List was public and Defendants did not steal or use it. Additionally, § 134A.007 of Texas Uniform Trade Secret Act ("TUTSA") displaces Plaintiff's remaining claims as they are based on the alleged Broker List misappropriation. Accordingly, Defendants are entitled to summary judgment on Plaintiff's remaining claims.

Finally, there is a complete lack of evidence of damages on any of Plaintiff's claims. Plaintiff cannot show a single lost sale or any other loss because the undisputed facts show that prior to this litigation, HomeBridge did not have access to or knowledge of the Broker List and, following the early entry of the preliminary injunction which still continues, HomeBridge has not funded a loan or otherwise done business with a single prohibited broker from the Broker List. In addition, Truman never used the Broker List at HomeBridge and Plaintiff cannot demonstrate a reasonable royalty because, by operation of the preliminary injunction, Defendants are precluded from making any sales to enjoined brokers on the Broker List. For the reasons stated above and because Plaintiff cannot show actual damages, unjust enrichment, or a reasonable royalty, summary judgment should be granted to Defendants on all of Plaintiff's claims.

## II.  UNDISPUTED FACTS

1.  HomeBridge has been in the mortgage business for 27 years, having begun operations in 1989. APP 1378-79, ¶3. Today, it is one of the Nation's largest privately held, non-bank lenders, comprising nearly 1,400 associates in more than 90 retail branches from coast to coast and two separate divisions: HomeBridge Wholesale and Remn Wholesale. *Id*. HomeBridge provides mortgages as both a wholesale lender and through its retail branches. *Id*. The retail branches work directly with the borrower. *Id*. A wholesale lender does not deal directly with consumers, but offers its loans through third parties such as mortgage brokers or other banks. *Id*.

2.  HomeBridge began doing business in Nevada in approximately 2010. APP 1379, ¶5. However, effective January 1, 2013, Nevada changed its law and required wholesale lenders like HomeBridge to be licensed. *Id*. Because the size of the Nevada mortgage business at the time was relatively small as compared to other states, HomeBridge temporarily ceased its operations

in the state, but reopened 20 months later when it obtained its Nevada license on August 5, 2014. *Id.*

3.      Truman has been in the mortgage industry for more than 10 years. Dkt. No. 9-9, p. 2. She also holds a Mortgage Agent License in Nevada and, as a result, can serve as its "Qualified Employee" for a mortgage company. APP 94-95, 48:23-49:8; APP 95, 52:1-3; ; APP 178, Ex. 2. Based on her time and effort in the industry, she developed extensive relationships with brokers. Dkt. No. 9-9; APP 151. Indeed, she has worked with a significant number of the brokers in Nevada over this time. Dkt. No. 9-9. Since joining HomeBridge, Truman's total loan production as of October 2015, is $23,125,520. APP 1387, ¶27; APP 1683-96, Ex. G.

4.      Plaintiff has been operating for approximately 8 years, having been founded in 2007. APP 3, ¶11; APP 992-95, Ex. H. According to NMLS records, Plaintiff first registered to do business in Nevada on December 20, 2012. APP 3, ¶11; APP 996-1000, Ex. I. Plaintiff has not produced any evidence of any earnings whatsoever in Nevada. APP 1046-67, 1075-1100.

5.      Truman was hired by Plaintiff in November 2013. APP 97, 61:3-12. Prior to this date, Plaintiff had no Account Executive in Nevada handling broker accounts. APP 98, 62:5-13. She was also critical as Plaintiff was precluded from doing business in Nevada until it hired a licensed broker that could be designated as its "Qualified Employee." APP 96, 53:6-10; APP 98, 62:5-13. Upon her hiring, Plaintiff designated her as its "Qualified Employee."  APP 96, 53:6-10.

6.      On July 21, 2014, HomeBridge hired Truman as an Account Executive for Nevada. APP101, 73:18-20; APP 275-84, Ex. 10; APP 515, 173:2-4. Prior to hiring Truman, HomeBridge obtained the consent of the Plaintiff to interview and hire her. APP 1755-56, 232:24-233:9; APP 94, 45:21-24 . On August 26, 2014, Truman created a marketing list of the brokers she had been

doing business with over the last decade by using the contacts stored in her phone. APP 146-47, 254:24-259:10; APP 90, 29:21-30:10. She provided this list to HomeBridge. APP 325-28, Ex. 18. This is the only list of brokers Truman ever provided to HomeBridge. APP 157, 299:12-300:17**.**

7.     On August 29, 2014, Truman emailed herself an Excel spreadsheet of her brokers (the Broker List). APP 150, 271:21-272:4. Truman never provided this list or its contents to HomeBridge or to anyone else. APP 157, 299:12-300:17. HomeBridge has no knowledge of and did not intentionally induce Truman to engage in any dual employment, take or disclose any trade secrets, destroy or fail to return any property, or refuse to return any property. APP 1388-89, ¶30.

8.     On October 10, 2014, this Court entered a preliminary injunction regarding the Broker List. Dkt. No. 29. The injunction prohibited Truman and other former 360MTG employees from doing business with any broker on the list unless she or HomeBridge could demonstrate they had previously done business with that broker.  Truman submitted proof regarding 15 brokers. *See* Dkt. No. 47, Ex. C, Declaration of Janine Bivona-Truman. As a result, those 15 brokers were released from the preliminary injunction (the "Released Brokers"). Since joining HomeBridge, Truman has only done business with brokers that were either (a) not on the Broker List or (b) Released Brokers. APP 1387-88, ¶26.

9.     Neither Truman nor HomeBridge has ever used the Broker List. APP 1387-88, ¶26. HomeBridge has not funded or closed a loan or otherwise done business with a single prohibited broker from the Broker List. *Id*. Truman never used the Broker List while employed at Plaintiff because she was focused on doing business with her existing list of brokers and half of the names

on the Broker List were inactive accounts or out of business. APP 151, 274:17-275:3. It was, and still is, a "completely useless list" that could not provide a competitive advantage. *See id.*

10.   In addition, all of the information in the Broker List can be obtained through public sources except for information that was inaccurate or stale (e.g., broker no longer in business, broker at a different address). APP 1383-84, ¶24; APP 1386-87, ¶16. For example, the information in the Broker List is publicly available through the NMLS. APP 1380, ¶8; APP 1391, Ex. A. Indeed, the NMLS Consumer Access search identified 100 percent of the brokers on the Broker List not identified as "Prospect" and 17 entities on the Broker List which are not authorized to do business in Nevada.[2] APP 1380-81, ¶ 9; APP 1668-81, Ex. F. . The NMLS Consumer Access search clearly shows that the information in the Broker List is known outside 360MTG, is generally known, and is easily discoverable by inspection of public sources. APP 1383, ¶15.

11.   At the time this suit was filed in September 2014, and still in July 2015, all of the information about all licensed and operating brokers in Nevada was public through the MLD Website. Dkt. No. 9-1, Ex. A; *see also* APP 1350-51, ¶¶3, 4.;. Dkt. No. 35, PI Hr'g Tr. 19-22. Using the MLD Website, anyone could obtain the following information about Nevada brokers: "Nevada license number, name of broker, current license status, name of principal, date license was originally granted, NMLS company ID, office locations, and for each office location, NMLS ID, name of qualified employee, address of office, office telephone number and email address for the qualified employee, the number of actively licensed agents in each office, and a link that provides information on each actively licensed agent for each office location." Dkt. No. 9-1, Ex. A. Using the website, HomeBridge "was able to was able to produce a list of all mortgage

---

[2] The NMLS Consumer Access search identified 97 of the total 119 entities listed on the Broker List. APP 1380, ¶ 9; APP 1668-81, Ex. F.

brokers licensed in the State of Nevada as of July 1, 2015 in a mere 12 minutes." *See* APP 1383-84, ¶16; APP 1351, ¶6.

12.   The information in the Broker List is publicly available through several other sources, including (1) via a public records request to the Nevada Mortgage Lending Division (APP 2, ¶4; APP 5-10, Ex. A); (2) public websites such as NAMB at www.namb.org (APP 1385, ¶ 19; APP1620-27, Ex. C); and (3) public sources where you can purchase the lists, such as LoanOfficerList.com List and Leadsplease.com for only $49 and around $200, respectively (APP 1385-86, ¶¶21, 22; APP 1628-34, Ex. D; APP 1635-67, Ex. E). The combination of each of these sources, resulted in the identification of 115 of the 119 entities on the Broker List. APP 1386, ¶23.. According to NMLS, three of the four entities not identified are not authorized to do business in Nevada and the fourth does not exist. *Id.*

13.   Simply put, the Broker List is nothing more than a listing of publicly available information regarding Nevada brokers. *See* APP 1379-1386, ¶¶6-23. The Broker List is not a list of Plaintiff's customers that would provide it, or anyone, a competitive advantage. APP 1383, ¶24; APP 1386-87, ¶16. For example, the list includes names with which Plaintiff has never done or attempted to do business. *See* Pl. Ex. 10; APP 1668-81, Ex. F (62 of 119 entities listed as "Prospect"). In fact, the Broker List "completely useless" because half of it includes inactive accounts, and brokers that are no longer in business and were not in business when it was created. APP 151, 274:17-275:3. Rather, the Broker List is essentially a phone book listing of Nevada brokers. APP 1386, ¶23; APP 1668-81, Ex. F.

14.   HomeBridge does not have access to and has never had access to any of the alleged trade secrets, including Plaintiff's: (1) broker vetting process; (2) associated information concerning brokers; (3) extensive data about brokers (e.g., broker production numbers, business

6

trends, types of loans the brokers utilize, profiles of broker's customers, and whether they specialize in refinancing); or data regarding confidential information about prospective borrowers. APP 1388-89, ¶30. Importantly, this information is nowhere to be found in the Broker List and HomeBridge has never used this information. *Id.*; Pl. Ex. 10. While Truman may have had access to this information while employed at Plaintiff, she did not take any of this information when her employment with Plaintiff ceased and, as a result, could not and did not provide it to HomeBridge. APP 157, 299:12-300:17. Since joining HomeBridge, Truman has never used this information, but instead uses her own contacts. APP 157-58, 300:18-301:11.

15.    The Broker List is not Plaintiff's trade secret broker list. APP 331-32, 108:11-16; APP 990-91, Ex. 19. Plaintiff's computer system includes a database that contains all of the trade secret information about Plaintiff's brokers as alleged. APP 828-31, 32:13-35:4. This database is user specific, meaning that while a user may have access to some information specific to his job, he would not have access to other information not related to his job. APP 831, 35:5-18. Thus, each account executive had access to this database and only their specific information, including the brokers assigned to them. APP 847, 51:3-13. Further, the database is a "locked" system, such that Plaintiff's trade secret information from this database cannot be printed, copied or emailed. APP 843-44, 47:17-48:3; APP 844-45, 48:24-49:2; APP 847, 51:3-13; APP 851, 55:18-25.  The Broker List was not created from this database and did not originate from it. APP 898, 102:13-18; APP 899,  103:22-24; APP 904, 108:11-16; *see also* APP 886, 90:12-15.

16.    There were no measures taken to protect the Broker List. APP 900-02; 104:22-106:22. The Broker List does not identify itself as belonging to Plaintiff or the information contained therein as confidential and/or proprietary. APP 900-02, 104:22-105:2, 106:3-4.   It was not

password protected. APP 902, 106:15-22. Plaintiff admits these were all easy efforts it could have taken to protect the secrecy of the Broker List but did not. APP 902, 206:6-22.

17.    HomeBridge did not misappropriate any property or information of Plaintiff.  It was not until after Plaintiff filed this lawsuit that HomeBridge learned Truman had not resigned from Plaintiff when she began her employment at HomeBridge and that she had emailed the Broker List to her personal email. APP 553-55, 211:8-24; APP 555, 213:15-23; APP 150, 271:21-272:4; APP 157, 300:13-301-11.

18.    The Broker List has no value to HomeBridge and its disclosure to HomeBridge would not provide any economic value for a number of reasons. First, the data is publicly available. *See* APP 1379-86, ¶¶6-23; APP 446-67, 124:2-125:1. Second, brokers are constantly changing jobs, quitting, or going out of business. APP 1386-87, ¶ 24**;** APP 858, 62:10-22. Thus a static list that is months and years old is questionable and useless. APP 151, 274:18-275:3; *see also* APP 1386-87, ¶24. HomeBridge will only do business with brokers properly licensed brokers, and it verified this information through public sources. APP 428, 86:16-23. Over the nearly 3 decades it has been in business, HomeBridge has developed a specific approval process that all brokers must go through. APP 1388, ¶29; APP 428, 86:16-23; APP 664; 322:9-10.

19.    Other than those brokers that were released from the injunction, HomeBridge has: (1) prohibited Truman from having any contact with brokers on the Broker List; (2) not approved any brokers on the Broker List; and (3) done no business with brokers on the Broker List that were not released from the injunction. APP 1387-88, ¶26; APP 585-86, 243:11-244:4; APP 152-53, 280:20-281:10.

20.    Plaintiff has suffered no damages, lost no sales, and has not been precluded from entering into any business relationship with any broker as a result of any act of either Defendant.

APP 2, ¶6-8; APP 1049-67; APP 22-24, Plaintiff's Response to Interrogatory Nos. 4, 8. HomeBridge has not funded any loan from any broker based on any misappropriation of Plaintiff's property. APP 1387-88, ¶¶25-26; APP 585-86, 243:11-244:4.

### III.     SUMMARY JUDGMENT STANDARD

A movant is entitled to summary judgment when the pleading, depositions, answers to interrogatories, admissions, and affidavits show there are no genuine issues about any material fact. FED. R. CIV. P 56(c); *Celotex Corp. v. Catrell*, 477 U.S. 317, 322 (1986).

### IV.     ARGUMENTS AND AUTHORITIES

#### A.     Misappropriation of Trade Secrets

Plaintiff's misappropriation claim identifies a single alleged trade secret— the Broker List. In Texas, misappropriation of trade secrets is governed by the TUTSA. To recover damages under TUTSA, a Plaintiff must prove (1) the existence of a trade secret; (2) owned by plaintiff; (2) that Defendants misappropriated through improper means; and (3) which caused damages. CIV. PRAC. & REM. CODE (hereinafter abbreviated "CPRC") § 134A.002(1)(3), (6); 134A.004; *Educ. Mgmt. Servs., LLC v. Tracey*, 102 F. Supp. 3d 906, 914 (W.D. Tex. 2015).

#### 1.     The Broker List is Not a Trade Secret.

The threshold determination under TUTSA is whether something constitutes a trade secret. The statute defines a "trade secret" as:

> [I]nformation, means information, including a formula, pattern, compilation, program, device, method, technique, process, financial data, or list of actual or potential customers or suppliers, that:
>
> (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
>
> (b) the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

9

*Id.* at § 134A.002(6). Here, the evidence shows that the Broker List is not a trade secret because (1) it provides no independent economic value to Plaintiffs; (2) it is readily ascertainable by proper means because the information contained therein is publicly available; (3) Defendants did not disclose or use it and thus it provided no economic value to Defendants; and (4) it was not protected by reasonable efforts.

### (i)    The Broker List does not provide an independent economic value to either the Plaintiff or Defendant.

To prove that the alleged trade secret derives "independent economic value," actual or potential, the Plaintiff must show that the trade secret is generally unknown to and not readily ascertainable by Defendants who can derive value from its use or disclosure. *Id.* at § 134A.002(6). Evidence of independent economic value would include the time, money and effort spent creating the information or that would have been saved by a competitor. *See* UNIFORM TRADE SECRET ACT § 1 cmt; *see Great Am. Opportunities, Inc. v. Cherrydale Fundraising, LLC*, Civil Action No. 3718-VCP, 2010 Del. Ch. LEXIS 15, at *70 (Ch. Jan. 29, 2010) (noting that a trade secret has independent economic value if a competitor cannot recreate it without a similar expenditure of time and money); *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 923 F. Supp. 1231, 1253 (N.D. Cal. 1995) (noting that independent economic value can be shown by "evidence of the resources invested in producing the information . . . and the willingness of others to pay for its access").

Plaintiff alleges that Defendants misappropriated the Broker List. Dkt. No. 1-2, Verified Petition, at ¶ 21. Plaintiff also alleges it spent significant time, money, and effort creating the Broker list, *id.* at ¶¶ 8-9, but has no evidence to support this allegation. The majority of brokers on the list never went through Plaintiff's "extensive vetting process" and have never been customers of Plaintiff.   Others on the list are out of business.   Thus, the Broker List is "a

completely useless list" which, as discussed below, is easily recreated with no time, money, and effort. *Supra* ¶ 9. Because Plaintiff cannot show the Broker List has any independent economic value, summary judgment should be granted.

Furthermore, Plaintiff must also show that the Defendants derived economic value from the disclosure or use of the Broker List. CPRC § 134A.002(6)(A). Plaintiff cannot meet this burden. Truman never used the Broker List while employed at Plaintiff or HomeBridge because it was "a completely useless list" filled mostly with inactive accounts and out of business brokers. *See supra* ¶ 9. Truman never provided the Broker List to HomeBridge and HomeBridge never had access to the Broker List prior to this suit or did business with any broker on the list. *See supra* ¶ 7. Simply, HomeBridge never received, never disclosed, and never used the Broker List. *See supra* ¶ 7. Because Plaintiff cannot show any evidence to the contrary, summary judgment should be granted.

**(ii)    The Broker List is publicly available.**

The Broker List is not a trade secret because the information is publicly available. To prevail, Plaintiff must show that the information in the Broker List is not "readily ascertainable by proper means." CPRC § 134A.002(6)(A). "'Proper means' means discovery by independent development, reverse engineering unless prohibited, or any other means that is not improper." *Id.* at § 134A.002(4). Merely a "list of readily ascertainable names and addresses will not be protected as a trade secret." *Guy Carpenter*, 334 F.3d at 467; *Allan J. Richardson & Assocs. v. Andrews*, 718 S.W.2d 833, 837 (Tex. App.—Houston 14th Dist. 1986) (finding client list was unprotectable as trade secret because the names "are readily available to the general public in directories"); *SCM Corp. v. Triplett Co.*, 399 S.W.2d 583, 586 (Tex. Civ. App.—San Antonio 1966) (same). If the names and addresses of customers on a party's customer list are readily ascertainable, it is not protectable as a trade secret. *Gaal v. BASF Wyandotte Corp.*, 533 S.W. 2d

152, 155 (Tex. Civ. App.—Houston [14th Dist.] 1976, no writ).

Fatal to plaintiff's claims, the information in the Broker List is not a secret and is readily ascertainable from multiple public resources.  For example, a search of publicly available NMLS records identified 100 percent of the brokers on the Broker List not identified as "Prospect."[3] *See supra* ¶ 10. Additionally, the information on the Broker List was previously available through the Nevada MLD Website and is still publicly available through a public records request to the Nevada MLD.[4] *See supra* ¶¶ 11, 12. The information is publicly available through the public website for NAMB, www.namb.org. *See supra* ¶ 12. Additionally, the information may be properly and cheaply purchased from LoanOfficerList.com and Leadsplease.com for as little as $49 and $202.77, respectively. *See supra* ¶ 12. These sources combined resulted in the identification of 115 of the 119 entities on the Broker List.[5] *See supra* ¶ 12. Persons in the industry know that the Broker List information is publicly available from these and other sources. APP 1714, 67:3-9; APP 1719, 62:7-23; APP 1721, 96:3-10; APP 464-70, 122:16-128:15; APP . Because Plaintiff cannot conceivably show that the information on the Broker List is not readily ascertainable by proper means, summary judgment should be granted.

### (iii)    The Broker List is also not a trade secret because it was not protected by reasonable efforts.

Plaintiff cannot show that it took reasonable efforts to maintain the secrecy of the Broker List. CPRC § 134A.002(6)(B). Plaintiff's complaint sets out a litany of "secrets" it has compiled

---

[3] The NMLS search identified 97 of the total 119 entities listed on the Broker List and also identified 17 entities on the Broker List which are not authorized to do business in Nevada.

[4] Nevada law provides that all papers, documents, reports and other written instruments filed with the Commissioner are open to public inspection. NRS 645.090(1). This includes applications to be licensed as a mortgage broker in Nevada, which require, among other things, stating the name, address, and locations of each principal and branch offices of the applicant. NRS 645B.020(1)(a), (b), (c)(2). Thus by law, the information contained on the Broker List is publicly available.

[5] According to NMLS, three of the four entities not identified are not authorized to do business in Nevada and the fourth does not exist.

and maintains on brokers. Dkt. No. 1-2, Verified Petition, at ¶ 9. As described above, the Broker List is not Plaintiff's secret and protected customer list. *See supra* ¶¶ 15-16. Plaintiff uses reasonable efforts to protect the secrecy of its customer list database, but Plaintiff took no effort to protect the secrecy of the Broker List.

### 2.      Defendants Did Not Misappropriate the Broker List.

To prove a claim under TUTSA, the Plaintiff must show that Defendants misappropriated the trade secret. CPRC § 134A.002(3). Misappropriation means (1) acquisition of the trade secret by a person who knows or has reason to know that the trade secret was acquired by improper means, or (2) disclosing or using the trade secret without consent. *Id.* at § 134A.002(3)(A), (B). "'Improper means' includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, to limit use, or to prohibit discovery of a trade secret, or espionage through electronic or other means." *Id.* at § 134A.002(2).

"Use of the trade secret means commercial use by which the offending party seeks to profit from the use of the secret." *Atlantic Richfield Co. v. Misty Products, Inc.*, 820 S.W.2d 414, 422 (Tex. App.—Houston 14th Dist. 1991) (*citing Metallurgical Indus. Inc. v. Fourtek, Inc.*, 790 F.2d 1195, 1205 (5th Cir. 1986)); *see also IBP, Inc. v. Klumpe*, 101 S.W.3d 461, 477 (Tex. App.—Amarillo 2001) (finding that plaintiff "offered no proof that the [alleged trade secrets] were used in any manner which would be or was intended to be in competition with [plaintiff's] business or which would impair the value of the [alleged trade secrets] commercially"). Citing the Texas Supreme Court, the Fifth Circuit has stated that a "cause of action for misappropriation of trade secrets accrues when the trade secret is ***actually used***." *Gen. Universal Sys. v. HAL Inc.*, 500 F.3d 444, 450 (5th Cir. 2007) (*citing Computer Assocs. Int'l v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996)) (emphasis added by Fifth Circuit).

The undisputed facts show that HomeBridge has not made any actual use of the Broker

List. *See supra* ¶¶ 9, 17, 19. Without any use, Plaintiff cannot recover on its claim for trade secret misappropriation even assuming *arguendo* that the Broker List is a trade secret.  Further, the evidence shows that none of the information from the Broker List was provided to HomeBridge. *See supra* ¶ 7. Except for the Released Brokers, HomeBridge never funded or closed a loan with a broker on the Broker List, and has not otherwise done business with a single broker from the Broker List. *See supra* ¶ 8. The evidence also shows that HomeBridge did not cause or induce Truman to use any improper means to acquire the Broker List. *See supra* ¶ 7. In fact, it was not until after Plaintiff filed this lawsuit that HomeBridge learned that Truman had not resigned from Plaintiff when she began her employment at HomeBridge and that Truman had emailed the Broker List to her personal email. *See supra* ¶ 17. Prior to the lawsuit, HomeBridge was unaware of these facts. *See supra* ¶ 17. Because Plaintiff cannot show that HomeBridge used improper means to acquire the Broker List or that it disclosed or used the secret without Plaintiff's consent, summary judgment should be granted.

The evidence also shows that Truman did not use improper means to obtain the Broker List. Further, under the terms of her employment agreement, Truman agreed not to disclose or use the Broker List for personal gain. APP 182.  The evidence shows that she never provided the Broker List to anyone and has never used it. *See supra* ¶¶ 7, 9. Truman never submitted to HomeBridge a broker for approval or a loan for funding based on the Broker List. *See supra* ¶ 9. Rather, the business she has done at HomeBridge has been with brokers she has worked with over her last decade in the industry. *See supra* ¶ 9. Because Plaintiff cannot show that Truman used any improper means to acquire the Broker List or that she disclosed or used it without Plaintiff's consent, summary judgment should be granted.

3. **Plaintiff's Misappropriation Claim also Fails Because Plaintiff Has Suffered No Damages.**

A Plaintiff may only recover damages under TUTSA if it shows the misappropriation caused an injury. CPRC § 134A.004(a). Damages can include both the actual loss and unjust enrichment caused by the misappropriation. *Id.* Alternatively, a plaintiff may recover a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret. Plaintiff has no damages because it cannot show (1) it lost a single sale, (2) Defendants were unjustly enriched, or (3) it is entitled to a reasonable royalty.

(i) **Plaintiff cannot show a single lost sale or any other loss.**

A plaintiff shows actual loss by showing misappropriation, the defendant's subsequent commercial use, and evidence by which the jury can value the rights the defendant obtained. UTSA § 3 cmt; *Premier Lab Sup. v. Chemplex Indus.*, 94 So.3d. 640, 644 (Fla. Dist. Ct. App. – 4th Dist. 2012) (Florida law interpreting exact language). Here, the evidence shows HomeBridge never possessed or used the Broker List and, prior to this litigation, did not have access to or knowledge of the Broker List. *See supra* ¶¶ 7, 9, 17. Due to the early entry of the preliminary injunction which continues to this day, HomeBridge has not funded a loan with a single prohibited broker from the Broker List.[6] *See* Dkt. No. 47, Ex. D, Sheridan Decl. ¶ 4 (filed under seal). Similarly, Truman never used the Broker List at HomeBridge or made any commercial use of it.  *See supra* ¶ 9. Thus, because the preliminary injunction precluded Defendants from making any use of or profit from the Broker List, Plaintiff has suffered no damages.  *M-I LLC v. FPUSA, LLC,* 2015 U.S. Dist. LEXIS 149160, at *34 (W.D. Tex. Nov. 4, 2015) ("The purpose of a preliminary injunction is to prevent future harm…").

---

[6] As a result, HomeBridge has earned no sales or profits. Similarly, Truman has not earned a commission from HomeBridge based off a loan from a single enjoined broker on the Broker List. Therefore, the Plaintiff cannot show that Defendants were unjustly enriched in any way.

**(ii)     The Plaintiff cannot demonstrate a reasonable royalty.**

As described above, the evidence shows that by operation of the preliminary injunction, Defendants are precluded from making any sales to enjoined brokers on the Broker List. Consequently, there is no evidence by which a reasonable royalty can be calculated.  While Plaintiffs submitted an expert report alleging considerable damages, Plaintiff's proposed methodology of speculating is fatally flawed.[7]  Indeed, as set forth in Defendants' expert report, the report of Plaintiff's damages expert is unreliable, lacks any basis other than pure speculation and is inadmissible. APP 1783-84, ¶ 7; APP 1787-88, ¶ 3; APP 1792-95, ¶ 17-23; APP 1795-99, ¶25; APP 1802-03, ¶31-32; APP 1804-08, ¶ 35-42. Therefore, Plaintiff's expert report does not meet the requirements to show damages under a TUTSA claim. Because Plaintiff cannot show actual damages, unjust enrichment, or a reasonable royalty, summary judgment should be granted.

**B.     TUTSA Preempts Many of Plaintiff's Claims.**

Plaintiff's claims for interference with prospective economic advantage, breach of fiduciary duty, conversion and theft, conspiracy, aiding and abetting, respondeat superior; other agency theories, unjust enrichment, and constructive trust are preempted by TUTSA. TUTSA provides that, "Except as provided by Subsection (b), this chapter displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret."  CPRC § 134A.007. While no Texas court has interpreted this provision derived from the Uniform Trade Secrets Act, other Courts interpreting this same UTSA provision have found that "[t]he plain language of the preemption provision indicates that the law was intended to prevent inconsistent theories of relief for the same underlying harm by eliminating alternative theories of

---

[7]  It is evident from the face of Plaintiff's expert report, that the authors (Plaintiff's owners) lack any training or experience necessary to provide an expert opinion regarding a reasonable royalty, that the method is flawed, and the damage purely speculative.

common law recovery which are premised on the misappropriation of a trade secret." *Smithfield Ham & Prod. Co. v. Portion Pac, Inc*., 905 F. Supp. 346, 348 (E.D. Va. 1995); *K.F. Jacobsen & Co. v. Gaylor*, 947 F. Supp. 2d 1120  (D. Or. 2013) (stating that "[w]here the essence of the claim relates primarily to the alleged misappropriation of a trade secret, the claim is displaced by the preemptive language of the Trade Secrets Act").  Here, because the asserted facts for these claims relate primarily to the alleged trade secret misappropriation, each is claim is displaced by the preemptive language of TUTSA and summary judgment should be granted.

### C.      The Remainder of Plaintiff's Other Claims Fail as a Matter of Law

#### 1.      There Was No Conspiracy or Aiding and Abetting.

Plaintiff's claims for conspiracy and aiding and abetting fail as a matter of law because (1) HomeBridge was unaware of Truman's transmission of the Broker List to herself until the commencement of the suit, and thus there could not have been any meeting of the minds; (2) the Broker List is not a trade secret, thus Truman did not commit an unlawful, overt act by sending it to herself; and (3) Plaintiff has failed to prove any damages as a result of Truman's transmission of the Broker List. *See supra* ¶ 17.

#### 2.      The Respondeat Superior Claim Fails.

This claim fails as a matter of law as it is not an independent cause of action, but is a theory of allocating liability.  *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754 (Tex. 2007).  Summary judgment is also appropriate because (1) Plaintiff has no damages, and (2) Truman did not commit a tort against Plaintiff while acting in her scope of employment for HomeBridge.

#### 3.      The Unjust Enrichment & Constructive Trust Claims Fail.

These claims fail because Defendants made no use of the Broker List and did no business with the enjoined brokers.  *See supra* ¶¶ 7, 9. Defendants made no profits from any of the

17

enjoined brokers on the Broker List and thus have no monies which should be returned to Plaintiff. *See supra* ¶¶ 9, 20. Plaintiff has presented no evidence that Defendants have received any benefit from 360MTG by fraud, duress, or taking undue advantage or that Defendants breached a fiduciary duty. The Broker List is not a trade secret and thus any alleged taking thereof was not fraudulent. *See supra* ¶¶ 10-13. Additionally, Plaintiff has suffered no damages from the alleged taking of the Broker List, and thus Plaintiff's claims fail as a matter of law.

### 4.     The Breach of Contract Claim Fails.

The essential elements of a breach of contract claim are (1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached; and (4) the plaintiff was damaged. *McLaughlin, Inc. v. Northstar Drilling Techs., Inc*., 138 S.W.3d 24, 27 (Tex. App. —San Antonio 2004, no pet.). Defendants are entitled to summary judgment because (1) the Broker List is not a trade secret; (2) Truman never disclosed the Broker List to HomeBridge and never used it at HomeBridge; (3) Truman did not destroy Plaintiff's property; (4) Truman does not have any of Plaintiff's property and, regardless, her contract does not require she it; and (5) Plaintiff suffered no damages. *See supra* ¶¶ 10-13, 7; APP 182.

### 5.     The Tortious Interference Claims Fail

The essential elements of a tortious interference with a contract are (1) the existence of a contract subject to interference; (2) the defendant committed a willful and intentional act of interference; (3) that act proximately caused injury; and (4) actual damages. *Lazer Spot, Inc. v. Hiring Partners, Inc*., 387 S.W.3d 40, 52 (Tex. App.—Texarkana 2012, pet. denied). The essential elements of tortious interference with prospective business relations are:   (1) a reasonable probability plaintiff would have entered into a business relationship with a third party; (2) defendant either acted with a conscious desire to prevent the relationship or knew the interference was certain or substantially certain to occur as a result; (3) defendant's conduct was

independently tortious; (4) the interference proximately caused the plaintiff injury; and (5) actual damages. *Coinmach Corp. v. Aspenwood Apt. Corp*., 417 S.W.3d 909, 923 (Tex. 2013). A defendant is not liable if its acts were privileged or justified, such as the exercise of its own rights or its good-faith assertion of rights. *U.S. Enercorp, Ltd. v. SDC Mont. Bakken Expl., LLC*, 966 F. Supp. 2d 690, 704-05 (W.D. Tex. 2013).  Defendants are entitled to summary judgment because (1) HomeBridge committed no actionable tort; (2) HomeBridge did not know, agree, or assist Truman in any breach of her agreement; (3) Plaintiff has not lost a single sale and has not identified a single business opportunity they were precluded from entering into; and (4) Plaintiff has no damages.   HomeBridge has no knowledge of and did not intentionally induce Truman to engage in any dual employment, take or disclose any trade secrets, or destroy or fail to return any property, or refuse to return any property. *See supra* ¶ 7.

### 6.      The Breach of Fiduciary Duty Claim Fails

Defendants are entitled to summary judgment because (1) Truman did not breach any duty; (2) HomeBridge has no knowledge of and did not intentionally induce Truman breach any duty; (3) Defendants have not benefitted in any way; and (4) the Plaintiff has suffered no damages. *See Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied) (claim for breach of fiduciary duty requires showing that breach injured plaintiff or benefitted defendant and that plaintiff suffered damages); *see supra* ¶¶ 7, 9.

### 7.      The Conversion and Theft Claims Fail

Defendants are entitled to summary judgment on conversion and theft because (1) HomeBridge never had or used the Broker List; (2) Plaintiff never made a demand on Defendants to return the Broker List; and (3) Plaintiff has suffered no damages.  *See Wells Fargo Bank Nw., N.A. v. RPK Capital XVI, L.L.C*., 360 S.W.3d 691, 699 (Tex. App.—Dallas 2012, no pet.) (essential elements of conversion claim are that plaintiff made demand and suffered

19

damages); *see supra* ¶¶ 7, 9; APP 138, ¶ 30.

## V.      PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, the Defendants respectfully request that the

Court grant this Motion for Traditional Summary Judgment (in whole and/or in part), dismiss all

of Plaintiff's claims, and render a final judgment in favor of the Defendants. The moving

Defendants also ask for any and all further relief to which they may be entitled.

Respectfully submitted,


*/s/Victor C. Johnson*
Brian A. Colao
Texas Bar No. 00793528
BColao@dykema.com
Victor C. Johnson
State Bar No. 24029640
VJohnson@dykema.com
Scott E. Yackey
Admitted *pro hac vice*
SYackey@dykema.com
DYKEMA COX SMITH
1717 Main Street, Suite 4200
Dallas, Texas  75201
(214) 462-6400 – Telephone
(214) 462-6401 – Facsimile

**ATTORNEYS FOR DEFENDANTS
JANINE BIVONA-TRUMAN AND
HOMEBRIDGE FINANCIAL
SERVICES, INC., D/B/A
HOMEBRIDGE WHOLESALE AND
COUNTERCLAIM PLAINTIFF JANINE BIVONA-
TRUMAN**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 15th day of January, 2016, the undersigned electronically filed the foregoing using the Court's CM/ECF system which will send notice of electronic filing to all counsel of record.


     */s/Victor C. Johnson*_____

Victor C. Johnson

4821-8129-6428.4
110868\000002